UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DEANA COLEMAN,

        Plaintiff,

  v.

AMERICAN COMMERCE INSURANCE COMPANY, a foreign insurance company,

        Defendant.

Case No. 09-5721RJB

ORDER RE DEFENDANT'S AND PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

     This matter comes before the Court on Defendant American Commerce's Motion for Summary Judgement Re Negligent Infliction of Emotional Distress (Dkt. 90) and Plaintiff Coleman's Cross Motion for Summary Judgment (Dkt. 107, 109). The Court has considered the motions, responses, and the remainder of the file herein.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

     This case arises from a motor vehicle accident that occurred on September 9, 2006, at which Plaintiff's daughter, Kayla Peck, was seriously injured. Dkt. 38, p. 1. Plaintiff alleges that she suffered emotional distress from witnessing her daughter's injuries which manifested itself in long-term physical symptoms and lead to a diagnosis of Post Traumatic Stress Disorder ("PTSD"). *Id*. At the time of the accident, Ms. Coleman had an Underinsured Motorist ("UIM") Policy with Defendant American Commerce Insurance with whom she filed a claim. *Id*.

     On September 9, 2006, Ms. Coleman received a phone call informing her that Kayla was

ORDER - 1

in a car accident. Dkt. 90, p. 2; Dkt. 107, p. 1; Dkt. 110-4, p. 2; Dkt. 110-5, p. 28. Ms. Coleman arrived at the scene of the accident about 15 minutes after the phone call. Dkt. 90, p. 2; Dkt. 110-4, p. 2; Dkt. 110-5, p. 29. At the scene of the accident, Ms. Coleman states that there were police cars, fire trucks and an ambulance already present. Dkt. 110-4, p. 2; Dkt. 110-5, p. 30. When Ms. Coleman first saw Kayla, she was laying on a stretcher and being loaded into an ambulance. Dkt. 90, p. 4; Dkt. 110-4, p. 3; Dkt. 110-5, p. 31. Ms. Coleman stated that Kayla had blood on her face. *Id*. Ms. Coleman states that as a result of witnessing the accident, she suffers from anxiety, fear, and other physical reactions. Dkt. 110-4, p. 4-5.

## II. DISCUSSION

"The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." *Gee v. Tenneco, Inc*., 615 F.2d 857, 861 (9th Cir. 1980). Where the state's highest appellate court has not spoken on an issue, the federal court's role is to predict what decision the state's highest court would reach. *See Evanston Ins. Co. v. OEA, Inc*., 566 F.3d 915, 921 (9th Cir. 2009). A federal court uses "intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance" to predict how the state's highest court would rule. *Assurance Co. of Am. v. Wall & Assocs. LLC of Olypmia*, 370 F.3d 557, 560 (9th Cir. 2004). A federal court will follow the decisions of state intermediate appellate courts unless there is "convincing evidence" that the state's highest court would decide the issue differently. *Id*.

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

ORDER - 2

(1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*.  Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

The tort of negligent infliction of emotional distress ("NIED") is a limited, judicially created cause of action that allows a family member to recover for foreseeable intangible injuries caused by viewing a physically injured loved one shortly after a traumatic accident. *Colbert v. Moomba Sports, Inc.*, 176 P.3d 497, 500 (Wash. 2008)(*citing Hegel v. McMahon*, 960 P.2d 424 (Wash. 1998); *Gain v. Carroll Mill Co.*, 787 P.2d 553 (Wash. 1990)). In Washington, a cause of action for NIED is recognized "where a plaintiff witnesses the victim's injuries at the scene of an accident shortly after it occurs and before there is a material change in the attendant circumstances." *Id*. at 503.  In these circumstances, the plaintiff's emotional distress results from the shock caused by the personal experience in the immediate aftermath of an especially horrendous event of seeing the victim, surrounding circumstances, and effects of the accident as it actually occurred. *Id*.

ORDER - 3

A plaintiff cannot recover if he or she did not witness the accident or did not arrive shortly thereafter, meaning that he or she did not see the accident or the horrendous attendant circumstances such as bleeding or other symptoms or injury, the victim's cries of pain, and, in some cases, the victim's dying words, all of which would constitute a continuation of the event. *Colbert*, 176 P.3d at 503. Emotional distress from such circumstances is not the same as the emotional distress that will arise whenever a person knows a loved one is suffering but does not personally see that suffering or the injuries at the scene before there is a material change. *Id*. If the plaintiff is not present at the time of the accident and does not arrive on the scene shortly thereafter, foreseeability is lacking as a matter of law and there is no question to send to the jury on the question of foreseeability. *Id*.

In *Hegel*, the Washington Supreme Court reviewed two cases involving the issue of bystander NIED. *Hegel v. McMahon*, 960 P.2d 424 (Wash. 1998). In the first case, Dale Hegel was struck by a car and knocked into a ditch by the side of a road. *Hegel*, 960 P.2d at 425-26. Mr. Hegel's son and parents were driving along the same road and came upon the scene after the accident. *Id*. They discovered him lying in the ditch, severely injured and bleeding from his nose, ears, and mouth. *Id*. at 426. A few minutes later, Mr. Hegel's brother and sister-in-law also came upon the scene and observed him in the ditch. *Id*. Mr. Hegel's family sued the driver who hit Mr. Hegel for NIED. *Id*. The family alleged that the sight of Mr. Hegel's injured body in the ditch put them in a state of fear and panic and that they continue to suffer from anxiety and shock. *Id*. In the second case, nineteen-year-old Jeremy Marzolf was killed when his motorcycle collided with a school bus. *Id*. Jeremy's father happened upon the scene within 10 minutes of the collision, before emergency crews arrived. *Id*. He saw his son on the ground, still conscious, but "his leg was cut off, and he was about split in half." *Id*. Jeremy died soon afterward. *Id*. Jeremy's father sued the school district for NIED. *Id*. The Washington Supreme Court concluded that it was improper for the lower courts to dismiss the plaintiffs claims for NIED. *Id*. at 429. The court stated that plaintiffs in both cases were present at the scene, and may have witnessed their family members' suffering before there was a substantial change in the victim's condition or location. *Id*. at 429-30.

ORDER - 4

In *Colbert*, Mr. Colbert and his wife received a phone from the boyfriend of their daughter. *Colbert*, 176 P.3d at 498. They were informed that their daughter disappeared from the back of a boat at Lake Tapps and a search was taking place for her. *Id*. Mr. Colbert drove to the lake, which was about five minutes away. *Id*. at 499. When he arrived, police cars, ambulances, and the fire department were at the scene. *Id*. A few hours later, rescuers found Mr. Colbert's daughter's body. *Id*. Mr. Colbert stated that from the dock from where he was watching the search "he was able to recognize the body as [his daughter's]" as the rescuers pulled her out of the water in to the rescue boat. *Id*. The court affirmed the Court of Appeals decision in holding that Mr. Colbert was not a foreseeable plaintiff as a matter of law. *Id*. at 504. The court stated that when Mr. Colbert arrived, "the accident had already occurred - he did not observe his daughter's suffering or her condition while she was drowning." *Id*. The court also stated that it is appropriate to consider whether a plaintiff arrives on the scene of an accident unwittingly when determining whether a plaintiff can bring a bystander NIED claim. *Id*. at 505. The court accepted the reasoning in *Mazzagatti v. Everingham*, 516 A.2d 672 (Pa. 1986), regarding an unwitting plaintiff. The court in *Mazzagatti* explained,

> where the close relative is not present at the scene of the accident, but instead learns of the accident from a third party, the close relative's prior knowledge of the injury to the victim serves as a buffer against the full impact of observing the accident scene. By contrast, the relative who contemporaneously observes the tortious conduct has no time span in which to brace his or her emotional system.

*Id*.

In this case, Deana Coleman was informed of Kayla's accident by a third party, and she arrived at the scene of the accident about 15 minutes after the accident had occurred. Dkt. 110-5, p. 29. Police cars, fire trucks, and an ambulance were already at the scene. Dkt. 110-5, p. 30. It appears that the first time Ms. Coleman saw Kayla was when the paramedics were loading her into the ambulance. Dkt. 110-5, p. 31. Ms. Coleman stated that she saw blood on Kayla's face and could only see her from the waist up. Dkt. 110-5, p. 31, 36. Under these circumstances, there was a "material change" in the scene; Ms. Coleman did not see the "horrendous attendant circumstances;" and Ms. Coleman was not an unwitting plaintiff. There was a material change in the scene because, unlike *Hegel* where the plaintiffs happened upon the scene of the accident,

ORDER - 5

Kayla had been already been removed from the overturned vehicle and was being placed in the ambulance when Ms. Coleman first saw her. Additionally, there were police cars, fire trucks, and ambulances already at the scene, which is more like the situation in *Colbert*. Ms. Coleman also did not witness the horrendous attendant circumstance, unlike *Hegel* where the plaintiffs witnessed the actual accident and the severely injured bodies of the victims. She did not see a "crushed body," "bleeding," or "cries of pain." She only saw Kayla on a stretcher with blood on her face. Finally, Ms. Coleman had prior knowledge of the accident which is similar to the situation in *Colbert*.

Based on the circumstances, Ms. Coleman's injuries were not foreseeable as a matter of law. For the foregoing reasons, Plaintiff's motion for summary judgment should be denied and the Defendant's motion for summary judgment should be granted.

Defendant American Commerce requests in its reply that the Court strike Plaintiff Coleman's exhibits A, B, G and H. Dkt. 113, p. 6. The Court need not strike the Plaintiff's exhibits since they were not taken into consideration. Plaintiff requests in its reply that the Court consider sanctions for Defendant's use of an unpublished Washington Appellate case. Dkt. 127, p. 3. Sanctions are inappropriate in this case. The Court did not consider the case and did not consider any arguments based on the case by the Defendant.

### III. ORDER

The Court does hereby find and ORDER:

(1) Defendant American Commerce's Motion for Summary Judgment Re Negligent Infliction of Emotional Distress (Dkt. 90) is **GRANTED**;

(2) Plaintiff Deana Coleman's Motion for Summary Judgment Re Negligent Infliction of Emotional Distress (Dkt.107, 109) is **DENIED**; and

(3) The Clerk is directed to send copies of this Order all counsel of record and any party appearing *pro se* at said party's last known address.

///

///

///

DATED this 14th day of September, 2010.

/s/ Robert J. Bryan
Robert J. Bryan
United States District Judge

ORDER - 7